IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RICHARD ANDRUS,                                    :
                                                   :
            Plaintiff,                             :
                                                   :
      v.                                           :    C.A. No. 07-486***
                                                   :
CITY OF WILMINGTON; CITY OF                        :
WILMINGTON POLICE DEPARTMENT;                      :
CORPORAL HENRY CANNON;                             :
OFFICER CPL. CHRIS CONNELLY;                       :
OFFICER MARTY STORY;                               :
OFFICER STEPHEN BROCK; and                         :
OFFICER JEFFREY GLENN,                             :
                                                   :
            Defendants.                            :

## JOINT STIPULATED PROTECTIVE ORDER

The parties, by and through their undersigned counsel, hereby stipulate and agree that this

Joint Stipulated Protective Order (the "Protective Order") will control the use and dissemination of

certain information otherwise privileged pursuant to 11 *Del. C.* § 9200, *et seq.*, and certain

information privileged from public disclosure pursuant to the Delaware Freedom of Information Act,

29 *Del. C.* Chapter 100 ("FOIA"), and the Delaware Attorney General's Opinion in *The News*

*Journal v. City of Wilmington*, Att'y Gen. Op. No. 05-ib19 (Aug. 1, 2005) (a copy of which is

attached hereto as Exhibit "A"). This Protective Order shall be applicable to all parties and their

counsel and any individual assisting trial counsel in the course of the above-captioned lawsuit. The

parties, by and through their undersigned counsel, hereby stipulate and agree to the following terms

and conditions that shall be followed to prevent public disclosure of the privileged information

described herein:

      (1)    Any information disclosed pursuant to this Protective Order shall be available only

to trial counsel and individuals employed in trial counsel's office that are assisting trial counsel in the course of this litigation.

(2)    The only permitted use of any information disclosed pursuant to this Protective Order will be for the litigation of this matter – specifically, discovery, trial preparation, and trial in the above-captioned case.

(3)    Information disclosed pursuant to this Protective Order shall consist of the following:

(a)    Information privileged from public disclosure pursuant to FOIA Section 10002(g)(16) and the Delaware Attorney General's Opinion in *The News Journal v. City of Wilmington*, Att'y Gen. Op. No. 05-ib19 (Aug. 1, 2005), including but not limited to any Directives contained in the Police Officer's Manual for the Wilmington Police Department (also known as the "White Book") other than those that are purely administrative in nature; records assembled, prepared or maintained to prevent, mitigate or respond to criminal acts, the public disclosure of which would have a substantial likelihood of threatening public safety; and any other information relating to police investigative techniques and procedures or the disclosure of which would have a substantial likelihood of endangering the life or safety of citizens or law enforcement officers; and

(b)    Any information which would be otherwise privileged as set forth by 11 *Del. C.* § 9200, et seq., including, but not limited to, any personnel file or the contents thereof, and any file or contents of any file generated by the Office of Professional Standards for the Wilmington Police Department.

(4)    Any information disclosed under the Protective Order shall be accompanied at the time of disclosure by a written statement noting the applicability of the Protective Order.

(5)    Should any inadvertent or unauthorized disclosure occur, the undersigned counsel hereby agree to immediately take any and all necessary steps to remedy such unauthorized disclosure. Plaintiff's counsel shall also immediately contact counsel for Defendants and advise Defendants' counsel of said disclosure.

(6)    Any information disclosed under the Protective Order shall be and remain redacted to protect the privacy rights of any law enforcement officer that was the subject of an internal disciplinary procedure (other than the law enforcement officers named as Defendants in the above-captioned action) and any civilian complainants and/or witnesses.

(7)    Any name or other information that appears in the documents disclosed by Defendants that was subject to redaction under the Protective Order is an inadvertent disclosure and shall not constitute a waiver of any of the provisions of the Protective Order.  Said error shall be remedied immediately by Plaintiff's counsel by redacting the name and informing counsel for Defendants.

(8)    Counsel shall place under seal any information subject to the Protective Order when submitting such information to the Court.

(9)    Any individual who shall be provided information subject to this Protective Order shall be informed of the applicability of the Protective Order and be bound by the terms and restrictions contained herein.

Being duly sworn according to law, the parties, by and through their undersigned counsel, hereby stipulate, depose and state that the information contained herein is true, correct and constitutes the complete and final agreement of the parties with respect to the use and dissemination of the privileged information described herein.

Andrea J. F. Rhen, Esquire
Senior Assistant City Solicitor
City of Wilmington Law Department
Louis L. Redding City/County Building
800 N. French Street
Wilmington, DE 19801
(302) 576-2175

Attorney for Defendants

DATE: 5/1/08

Michael W. Modica, Esquire
715 King Street, Suite 300
P.O. Box 437
Wilmington, DE 19899
(302) 425-3600

Attorney for Plaintiffs

DATE: 4/29/08

SO ORDERED this _____ day of _____, 2008.

_____
                                            J.

# EXHIBIT A

August 1, 2005

Civil Division-Kent County (739-7641)

Mr. David Ledford
Vice President/News & Executive Editor
The News Journal
P.O. Box 15505
New Castle, DE 19720

Re:    **Freedom of Information Act Complaint**
       **Against City of Wilmington**

Dear Mr. Ledford:

On February 15, 2005, our Office received your complaint alleging that the City of
Wilmington ("the City") violated the public records requirements of the Delaware Freedom of
Information Act, 29 Del. C. Chapter 100 ("FOIA"), by not providing you with: (1) "A copy of the
Standard operating procedure (SOP) for the police department's 'F Squad'"; and (2) "Copies of all
email communications generated since Nov. 1, 2004 regarding shootings, homicides, street violence
or illegal drug sales sent to, written by, copied to, or forwarded to any of the following individuals:
Mayor James M. Baker, Chief of Staff William Montgomery, Public Safety Director James Mosley,
Police Chief Michael Szczerba, Communications Director John Rago, Capt. James Jubb and

Mr. David Ledford
August 1, 2005
Page 2

members of the City Law Department." [1]

At the start, we should explain the delay in making a written determination in response to your complaint. Both sides provided us with a significant amount of factual information which required our thorough review. In addition, the issue whether certain information in the possession of the police department is exempt under FOIA was one of first impression for this Office and required original legal research. Our determination could have been more expedient, however, and we apologize to all parties for the delay, which is not in keeping with our usual responsiveness.

By letter dated February 22, 2005, we asked the City to respond to your complaint within ten days. We received the City's response on March 7, 2005. We asked the City for additional information, which we received on April 7, 2005.

According to the City, the Wilmington Police Department is divided into six squads (A through F). "Squads A through E are regular patrol platoons, with rotating shifts. Each platoon covers the entire city, broken down into geographic **radio** districts. The F squad is the Community Sector Specialist Squad, which has two shifts. The F squad's only distinction from squads A through E is the F squad is assigned to long-term problem solving, therefore F squad is not generally subject to basic calls for service, . . . ."

In reviewing the correspondence and documents provided to us by you and the City, it is apparent that there was some misunderstanding about what information you were seeking regarding the F Squad. By e-mail dated January 7, 2005, you clarified: "Regarding the 'F-Squad' document we discussed, we've heard it described several ways. What we are looking for is the document used

---

[1]    In your FOIA requests to the City dated December 21, 2004 and January 13, 2005, you requested additional information, but it appears from the record that the City provided that additional information to you and so those issues have been resolved.

Mr. David Ledford
August 1, 2005
Page 3

during the police department's mandatory training for members of the F-Squad. The document has been described as an SOP, a policy and a training guide. The document contains standards, goals, requirements and the mission of the squad."

According to the City, there are no standard operating procedures, policies, or training guides specific to the F Squad. "The White Book is the exclusive source of standard operating procedures for the Wilmington Police Department . . . [T]here is no special manual for Community Service Specialists (F Squad) that is unique or specific to F Squad, or otherwise distinct from the White Book, or even distinct from squads A through E."

According to the City, the police department has recently developed written guidelines (not published in the White Book) "prescribing how to conduct a checkpoint encounter. . . . The guidelines are not standard operating procedures of the F Squad, but are general guidelines for the Police Department as a whole." The City provided a copy of the checkpoint guidelines for our *in camera* review.

The City contends that the checkpoint guidelines and the police department's White Book are exempt from disclosure under Section 10002(g)(16)a.5.A of FOIA.

As for the e-mails you requested, the City claims none exist within the parameters of your request. The Assistant City Solicitor has represented that he: (1) "independently verified with Director Mosley, Chief Szczerba and Captain Jubb that none of them sent or received any e-mail regarding shootings, homicides, street violence, or illegal drug sales"; (2) "independently verified with Law Department personnel that no one has sent or received any communications relating to shootings, homicides, street violence, or illegal drug sales during the time period identified by The News Journal"; and (3) "independently verified with [Mayor Baker, Chief of Staff Montgomery, and

Mr. David Ledford
August 1, 2005
Page 4

Communications Director Rago] that none of them sent or received any communications relating

to shootings, homicides, street violence, or illegal drug sales during the time period identified by The

News Journal."

## Relevant Statutes

FOIA provides that "[a]ll public records shall be open to inspection and copying by any

citizen of the State during regular business hours by the custodian of the records for the appropriate

public body." 29 *Del. C.* §10003(a).

FOIA exempts from disclosure "[t]hose portions of records assembled, prepared or

maintained to prevent, mitigate or respond to criminal acts, the public disclosure of which would

have a substantial likelihood of threatening public safety." *Id.* §10002(g)(16)a.5.

## Legal Authority

### A.    Law Enforcement Manuals

The City provided for our *in camera* review a copy of the index to the Wilmington Police

Department's "Police Officer's Manual" (a/k/a the White Book). The index shows that the White

Book is a comprehensive compendium ("A" (Abandoned Car) through "Z" (Zoo)) of operating

procedures for all police matters, criminal as well as personnel. The City also provided us for *in

camera* review a copy of the police department's check point guidelines.

The City claims that the White Book and the check point guidelines are exempt from

disclosure under FOIA under Section 10002(g)(16). The General Assembly enacted that exemption

in 2002 in response to the terrorist attacks of 9/11.

Mr. David Ledford
August 1, 2005
Page 5

Section 10002(g)(16) exempts from public disclosure any records that "could jeopardize the security of any structure owned by the State or any of its political subdivisions, or could facilitate the planning of a terrorist attack, or could endanger the life or physical safety or an individual." The exemption goes on to identify specific types of records, including "vulnerability assessments, specific tactics, specific emergency procedures, or specific security procedures"; and "[b]uilding plans, blueprints, schematic drawings, diagrams, operational manuals, or other records of mass transit facilities, bridges, tunnels, . . .."

Subparagraph 5. of the statute more broadly exempts "records assembled, prepared, or maintained to prevent, mitigate, or respond to criminal acts, the public disclosure of which would have a substantial likelihood of threatening public safety" including "vulnerability assessments or specific and unique response or deployment plans."

The federal FOIA has a similar exemption for records that would disclose "investigative techniques and procedures" or "endanger the life and physical safety or law enforcement personnel." 5 U.S.C. §552(b)(7)(E)(F).

In *Caplan v. Bureau of Alcohol, Tobacco & Firearms*, 587 F.2d 544 (2nd Cir. 1978), an attorney made a FOIA request for the BATF pamphlet "Raids and Seizures." The federal district court held that portions of the pamphlet regarding law enforcement techniques and procedures were exempt from disclosure "including descriptions of the equipment used by agents in making raids, the methods of gaining entry to buildings used by law breakers, factors relating to the timing of raids, and the techniques used by suspects to conceal contraband." 587 F.2d at 545. "[R]elease of such parts of the pamphlet would hinder investigations, enable violators to avoid detection and jeopardize the safety of Government agents." *Id.*

Mr. David Ledford
August 1, 2005
Page 6

> It would be anomalous indeed to attribute
> to Congress the intention to require agency
> revelation of internal law enforcement manuals.
> Such a step would increase the risk of physical
> harm to those engaged in law enforcement and
> significantly assist those engaged in criminal activity
> by acquainting them with the intimate details of the
> strategies employed in its detection.

587 F.2d at 547. Accord *Hardy v. Bureau of Alcohol, Tobacco & Firearms*, 631 F.2d 653, 656 (9th

Cir. 1980) (the exemption for investigatory techniques and procedures "would be pointless unless

the manuals instructing agents to use those techniques and procedures were also exempt from

disclosure").

Although a response to 9/11, Section 10002(g)(16) of Delaware's FOIA is not limited to

information that might aid terrorists to destroy buildings or infrastructure, but also exempts

information "prepared or maintained to prevent, mitigate, or respond to criminal acts, the public

disclosure of which would have a substantial likelihood of threatening public safety." 29 *Del. C.*

§10002(g)(16)A.5. We believe that exemption covers law enforcement manuals to the extent they

contain information that would disclose investigative techniques and procedures, or endanger the

life and safety of citizens or law enforcement officers.

We appreciate the difficulty a requestor may have in trying to frame a FOIA request when

it is not certain what records are in the possession of the government entity. Your FOIA request

specifically mentions "A copy of the standard operating procedures (SOP) for the police

department's "F" Squad." Based on the representations of the Assistant City Solicitor, there

apparently are no written operating procedures, policies, or training guides specific to the F Squad.

"[T]he nonexistence of a record is a defense for the failure to produce or allow access to the record."

Mr. David Ledford
August 1, 2005
Page 7

*Att'y Gen. Op.* 96-IB28 (Aug. 8, 1996).

Our investigation, however, reveals that there may be two other records which may contain information you are seeking, and to which you might have sought access: (1) the police department's checkpoint guidelines; and (2) the White Book.

We have reviewed the City's checkpoint guidelines *in camera*, and believe that they fall within the exemption under FOIA.  Public disclosure of those guidelines might hinder criminal investigations, enable violators to avoid detection, jeopardize the safety of police officers, and undermine enforcement of the law." *Caplin*, 587 F.2d at 545.

We now address the White Book.  In *Caplin*, the federal appeals court held that only those portions of the BATF pamphlet "Raids and Seizures) which might disclose confidential law enforcement techniques and procedures were exempt from disclosure.  Other portions pertaining to purely "administrative matters" must be disclosed to the public.  "All administrative materials, even if included in staff manuals that otherwise concern law enforcement, must be disclosed unless they come under one of the other exemptions of the act." *Hardy*, 631 F.2d at 657.

The Index to the "White Book" indicates that there are portions of the manual which appear to be protected by Section 10002(g)(16) of FOIA (*e.g.*, Building Security, D.U.I. Investigation, Court Security, Felony car stops, Stakeout, V.I.P. Protection).  Other portions of the manual appear to be administrative in nature and may not be exempt under FOIA (*e.g.*, Budgeting, Career Ladder Program, Classification of Uniforms, Meal Periods, Overtime, Promotion System).

We do not believe that the index to the White Book is exempt from disclosure under FOIA because the listings do not reveal any confidential law enforcement techniques or otherwise

Mr. David Ledford
August 1, 2005
Page 8

jeopardize officer safety and effective law enforcement. To the extent that the Index is within the

purview of your FOIA requests, the City must make a copy available to you. That will enable you

to determine whether any portions of the White Book are what you are seeking in your FOIA

requests. [2]

     If so, you may request a specific portion or portions of the White Book, at which time the

City can (consistent with this opinion) decide whether the section is protected from disclosure under

FOIA as a confidential law enforcement manual.

---

[2]     "Unquestionably, public records must be described clearly enough to permit the agency to determine whether writings of the type described in the request are under its control." *California First Amendment Coalition v. Superior Court*, 67 Cal.App.4th 159, 165 (1998). "However, the requirement of clarity must be tempered by the reality that a requestor, having no access to agency files, may be unable to precisely identify the documents sought. Thus, writings may be described by content." *Id.* 165-66.

Mr. David Ledford
August 1, 2005
Page 9

        B.     E-Mails

"FOIA does not require a public body to produce public records that do not exist." *Att'y*

*Gen. Op.* 96-IB28 (Aug. 8, 1996). The Assistant City Solicitor has represented, after verifying with

the individuals named in your FOIA request, that they do not have any e-mails responsive to your

request. [3] It has been our historical practice to accept such representations from an attorney for "the

custodian of public records to determine that such documents do not exist for purposes of FOIA."

*Att'y Gen. Op.* 97-IB01(Jan. 14, 1997). Based on the representations of the Assistant City Attorney,

we cannot compel disclosure under FOIA what apparently does not exist. "[T]he nonexistence of

a record is a defense for the failure to produce or allow access to the record." *Att'y Gen. Op.* 96-

IB28.

---

[3]    The City also claims that the e-mails would be exempt from disclosure under
Section 10002(g)(3) (investigative file) and/or Section 10003(g)(6) (attorney-client
privilege/work product). Lacking any information that the City has any responsive documents in
its custody, we do not have to determine the applicability of either of those two exemptions.

Mr. David Ledford
August 1, 2005
Page 10

## Conclusion

For the foregoing reasons, we determine that the City did not violate the public records requirements of FOIA by not providing you with access to the police department's checkpoint guidelines because those guidelines are exempt from disclosure under FOIA as confidential law enforcement techniques and procedures.

We also determine that the City did not violate the public records requirements of FOIA by not providing you with access to any standard operating procedures or training manuals specific to the "F" squad, and e-mails you requested, because those documents apparently do not exist, based on the representations of the Assistant City Solicitor.

To the extent you are seeking access to the police department's White Book, we determine that the index to the White Book is a public record under FOIA. We do not have to determine at this time whether any particular section of the White Book is exempt under FOIA because that issue is not yet ripe for decision.

Very truly yours,

W. Michael Tupman
Deputy Attorney General

APPROVED

_____
Malcolm S. Cobin
State Solicitor

cc:     The Honorable M. Jane Brady

Mr. David Ledford
August 1, 2005
Page 11

        Lawrence W. Lewis, Esquire
        Deputy Attorney General

        Alex J. Mili, Jr., Esquire

        Phillip G. Johnson
        Opinion Coordinator